[Civ. No. 19079. Second Dist., Div. Three. July 24, 1952.]

MILDRED RIPLING et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; RICHARD NORTON, Real Party in Interest.

Bernard B. Cohen for Petitioners.

Harold W. Kennedy, County Counsel, for Respondents.

Cantillon & Glover and McGinley & Hanson for Real Party in Interest.

SHINN, P. J.—Mildred Ripling and William J. Ripling seek a peremptory writ prohibiting respondent court from proceeding without a jury in the case of *Norton* v. *Ripling* (L. A. Super. Ct. No. 556274). It is not questioned that prohibition is a proper remedy.

On February 25, 1949, Richard Norton, as guardian of the estate of Thomas J. Norton, incompetent, filed an action against Mildred Ripling, sister of Thomas. (Thomas died in 1950 and Richard now appears as administrator.) The complaint was in two counts, the first pleading facts, the second a common count for money had and received. In substance the first count alleged that between January, 1942, and January, 1945, Thomas J. Norton had paid over and delivered to defendant "for safekeeping" $21,849.65; that defendant "orally promised and agreed to hold said moneys in safekeeping for plaintiff"; that defendant paid $4,172.88 from the sum for plaintiff's use; that the guardian had made a demand for the balance but defendant refused to pay. Prayer was for judgment of $17,676.77, costs and general relief. Amended complaints were successively filed in April, 1949, May, 1949, August, 1951 and September, 1951. In some of these (including the fifth) defendant William Ripling, husband of Mildred, was joined. The last complaint omitted the common count, elaborated the "safekeeping" allegations to ones of trust, and added allegations on information and belief that additional sums had been entrusted to defendants. The prayer of this complaint was for money, accounting and further relief. The answer to the fifth complaint admits receipt of $20,097.65, denies receipt of additional sums, and affirmatively alleges repayment to Thomas J. Norton of all sums entrusted.

After filing the first complaint in February, 1949, plaintiff attached real property and two bank accounts belonging to defendants. Later the property was sold and there remains under attachment one bank account with a balance of $1,-106.12, one bank account with a balance of $10,000 and a trust deed note for $13,500. In the affidavit for attachment plaintiff stated defendants are indebted to him upon an express contract for the direct payment of money "to wit money had and received."

In June, 1949, the cause was set for trial on the jury calendar *at plaintiff's request* but later went off calendar by stipulation. In September, 1951, defendant filed a request for trial and demanded a jury trial. Plaintiff later filed a mem-

orandum for setting on the nonjury calendar, and the case was set on the jury calendar. Before trial, the court granted plaintiff's motion for trial by the court and granted a continuance. On defendant's application an alternative writ issued from this court.

■ It is fundamental that the California Constitution preserves to litigants the right to jury trial as it existed at common law in 1850. (Cal. Const., art. I, § 7; Cal. Const. 1849, art. I, § 3; *People* v. *One 1941 Chevrolet Coupe,* 37 Cal.2d 283 [231 P.2d 832]; *Farrell* v. *City of Ontario,* 39 Cal.App. 351, 356 [178 P. 740].) ■ "It is a right 'secured to all,' and 'inviolate forever,' in cases in which it is exercised in the administration of justice according to the course of the common law, as that law is understood in the several States of the Union." (Field, C. J., in *Koppikus* v. *State Capitol Comrs.,* 16 Cal. 248, 254.) ■ If the "gist of the action" as framed by the pleadings is such that the issues raised would have been triable on the law side before 1850, a trial by jury is a matter of right. (*Grossblatt* v. *Wright,* 108 Cal.App.2d 475, 483 [239 P.2d 19].) As thus presented, the question is an historical one. ■ Although the common law forms of action are abolished and law and equity are united in one forum, the problem of right to a jury trial must still be approached in the context of 1850 common law pleading. ■ Thus, if the gist of the action is like common law debt, a jury trial must be granted when demanded. (*Grossblatt* v. *Wright, supra.*) ■ And, even though the case involves equitable principles if it is one where the common law courts could and would grant relief, trial by jury is preserved. (*Farrell* v. *City of Ontario, supra,* 39 Cal.App. 351; *Mortimer* v. *Loynes,* 74 Cal.App.2d 160, 168 [168 P.2d 481].) ■ The Legislature may not, directly, or in the guise of procedural changes or changes in remedy, deprive a litigant of a jury in a case formerly triable at law. (*People* v. *Kelly,* 203 Cal. 128, 133 [263 P. 226]; *People* v. *One 1941 Chevrolet Coupe, supra,* 37 Cal.2d 283, 299.) ■ Likewise, a litigant may not by pleading legal conclusions sterilize the right to a jury trial as this question is determined from a consideration of "all the facts of the case." (*Hutchason* v. *Marks,* 54 Cal.App.2d 113 [128 P.2d 573].) Thus the question presented here is: On the basis of the facts alleged in the fifth amended complaint and answer thereto, and the issues joined, is the case one which would have been triable at law before 1850?

Stripped of legal conclusions and reduced to ultimate facts the fifth complaint alleges that Mildred Ripling orally agreed to receive money given her by her brother Thomas J. Norton and to hold the funds until directed by him to pay them to him or for his benefit. It further alleges a demand for return of the remaining funds and refusal by Mildred Ripling to pay. The answer admits all of this except the refusal to pay, alleging that full payment had been made. There is a further controversy as to the amount turned over to Mildred. It thus appears there is one issue in the case, namely, whether all the funds Mildred received under the oral agreement were used for the benefit of Thomas J. Norton or returned to him. The prayer is for accounting, money judgment and declaration of a constructive trust in money.

The real party in interest insists, and the respondent court agreed, that this is an action to enforce a trust and thus would have been tried solely in equity prior to 1850. Petitioner insists the action is one for money and triable by the common law courts. On analysis of the pleadings and the issues framed we agree with petitioner.

A fundamental error in the position of plaintiff results from a failure to note the historical background of the remedies applicable to the type of relationship alleged to exist between defendant Mildred Ripling and Thomas Norton. Plaintiff has assumed that since it is in the nature of a trust relationship only courts of equity would enforce the obligation of the trustee. While it is true that usually only equity took cognizance of trust matters, there exists one class of cases founded on the old common law action of account which antedated the chancellor and which were triable either in law or equity. "The idea underlying the action of account was that the defendant was entrusted with property as a fiduciary . . . for which he was under an obligation to account." (1 Scott on Trusts 82.) "If A gave money to B to be kept and returned to A, A could bring an action of account against B." (*Id.*, p. 85.) "As the action of account became obsolete and the actions of debt and *indebitatus assumpsit* were stretched to occupy at least a part of the field occupied by the action of account, the court of chancery began to take jurisdiction. . . . Today it may be said, therefore, that a trust is enforceable only in equity, except where the action of account lay at common law; and that where account lay the jurisdiction of equity

is concurrent with that of the common-law courts which allow an action of debt or *indebitatus assumpsit* or the modern code equivalent of these actions." (*Id.*, p. 84.) As presently restated the guiding principle is that "[i]f the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment." (Rest., Trusts, § 198(1); see, also, Scott on Trusts, § 198.1.)

Although there is some confusion in the English cases and texts, it appears that they support the position taken by Professor Scott and the Restatement of Trusts. Sutton says of the old action of account: "Though this action lay at common law, we need only mention it to say that it is rarely met with in more modern times, owing to the substitution of other remedies for it. In the simpler cases such an action as assumpsit for money had and received was found to be sufficient, while in the more complicated cases the tendency was to proceed in Chancery, owing to the powers of that court to enforce discovery and the like, which the Courts of Common Law did not possess." (Sutton, Personal Actions At Common Law, p. 46.) A typical case involving this action is *Godfrey* v. *Saunders* (1770), 3 Wils. K. B. 73, 94, 95 Eng.Rep. 940, 952. In that case plaintiff consigned coral beads to defendant in the East Indies which were to be sold and diamonds returned in payment. Defendant had sold the beads but had not remitted the diamonds, and plaintiff brought an action of account. The court held account would lie. Modernly this would be an action to enforce a constructive trust, one thought usually to lie only in equity. But, since the diamonds were the equivalent of money, the action would be one for money the trustee was immediately to pay over and the case is within Scott's statement. A somewhat narrower view than that expressed by Scott and Sutto nis found in 33 Halsbury's, Laws of England (2d ed.) where it is said at page 305: "A breach of trust in itself is merely a violation of an equitable obligation; the remedy for it, therefore, lies in equity only and must be sought in a court of equitable jurisdiction." (Citing Co. Litt. 2726; *Sturt* v. *Mellish*, (1743), 2 Atk. 610, 612, 26 Eng.Rep. 765; *Allen* v. *Imlett and Nicholls* (1817), Holt 641, 171 Eng.Rep. 370.) But in a footnote to the above statement it is said (p. 306): "But an action for money had and received lies against a trustee on an admission that a balance belonging to the beneficiary is in his hands." (Citing *Roper* v. *Hol-*

*land* (1835), 3 AD. & E. 99, 111 Eng.Rep. 351; *Cummins* v. *Cummins* (1845), 3 Jo. & Lat. 64.) Three cases serve to clarify the principle and point out some of the confusion: *Sturt* v. *Mellish, supra*; *Roper* v. *Holland, supra*; and *Foley* v. *Hill* (1848), II H.L.C. 28, 9 Eng.Rep. 1002. In the Sturt case, which involved a constructive trust, the chancellor refused to refer the matter to a master for an accounting and said (p. 612) : ". . . a trust is where there is such a confidence between parties that no action at law will lie, but is merely a case for the consideration of this court (but Lord *Hobart*, it seems, was of opinion, that an action would lie against a trustee at common law. 1 Eq. Ab. 384, (D.) 1, note). . . ." In *Roper* v. *Holland, supra,* it was held that assumpsit would lie against a trustee for money as to a sum currently due to plaintiff as beneficiary of the trust. In *Foley* v. *Hill, supra,* funds of the plaintiff had been placed with defendant, who was a private banker, interest to be given and the sums to be paid over on request. The Lord Chancellor affirmed the lower court's dismissal of the bill for an accounting saying that where the account was simple equity would not take jurisdiction. Furthermore, in 1 Halsbury's Laws of England 53 (2d ed.) it is said that " '*special assumpsits*' lay . . . to account . . . for money. . . ." From the foregoing it appears that the law courts would entertain an action against a trustee where he had a duty immediately to pay over money to the beneficiary.

Many cases in the United States indicate that section 198 of the Restatement of Trusts correctly states the course of the common law as that law is understood in the several states of the union. (*Carl Byoir & Associates* v. *Tsune-Chi Yu* (2d Cir. 1940), 112 F.2d 885, 886; *Newlin* v. *Newlin* (1944), 114 Ind.App. 574 [52 N.E.2d 503, 505] ; *Cavanagh* v. *O'Connor* (1920), 189 Iowa 171 [176 N.W. 881] ; *Capraro* v. *Propati* (1940), 127 N.J.Eq. 419 [13 A.2d 318, 321] ; *Conner* v. *Fisher* (1934), 169 Okla. 197 [36 P.2d 501] ; *Dieter* v. *Scott* (1939), 110 Vt. 376 [9 A.2d 95, 100].) The Restatement of Trusts rule is also supported by California authorities. It was recognized but held not applicable to the facts (there was no immediate duty to pay over money) in *Lane* v. *Whitaker*, 50 Cal.App.2d 327, 331 [123 P.2d 53]. In *Austin* v. *Wilcoxson*, 149 Cal. 24, 26 [84 P. 417], it was held that an action similar to that at bar was one at law, not in equity, and no special findings were required.

In *Conner* v. *Fisher, supra,* 36 P.2d 501, the court said: "This is an action at law in the nature of the common-law action of account; the plaintiff alleging that the defendant who operated the property involved as trustee failed to account to the plaintiff, the beneficiary, for the proper income of the property. The petition prays for judgment in the approximate sum of $15,000. The trust had already been determined, and the property sold; nothing remaining to be done except make a final settlement, upon which the parties could not agree. . . . This is a suit for the recovery of money and is properly a jury case. . . ."

In *Austin* v. *Wilcoxson, supra,* 149 Cal. 24, plaintiff alleged one of her granduncles transferred $75,000 in trust for her to another granduncle, the sum to be paid to plaintiff on the trustee's death. The suit was brought against the executor of the trustee's estate and plaintiff contended that as it was an action to enforce a trust and in equity specific findings should have been made. In denying this contention, holding it was a law action, the court said at page 26: "We think, however, that plaintiff misconceives the legal effect of her complaint. It is not an action to declare and enforce a trust. She sues at law to recover moneys which she alleges have come into the hands of the defendant and which upon her demand he has refused to turn over to her. Her action may indifferently be called one in trover, in *assumpsit,* or for money had and received. It is true that to make out her title to the money she alleges that it was given by one of her granduncles to another granduncle in trust for her, but the allegation as to this defendant's connection with the fund is simply that he 'took possession of it' and refuses after demand to pay it over. The same allegation would be good against a thief who had actually stolen the money, and assuredly it cannot be said that a demand upon one who it is alleged has wrongfully taken and wrongfully holds money constitutes an equitable action to enforce a trust. The enforcement of a trust in equity has in contemplation the terms, conduct, and management of the trust, the settlement of the trustee's accounts, compensation to the trustee, the order of payment over and his discharge from his trusteeship. None of these matters is here in contemplation. . . . Equity will, of course, enforce a trust against the executor of the deceased trustee. (*Walkerly* v. *Bacon's Executors,* 85 Cal. 137 [24 P. 638]; *McGrath* v. *Carroll,* 110 Cal. 79 [42 P. 466];

*Byrne* v. *Byrne,* 113 Cal. 294 [45 P. 536]), but such is not the action here brought.''

The question of a jury trial in a suit against a trustee who fails to deliver the trust fund as required was also raised in *Dettenborn* v. *Hartford-Nat. Bank & Trust Co.* (1936), 121 Conn. 388 [185 A. 82]. At page 84 [185 A.] the court said: ''An action by a beneficiary claiming damages from a trustee for his breach of duty in refusing to pay or deliver the trust fund . . . is one at law, triable by jury. . . .''

 On the basis of the foregoing analysis of the law applicable to the present case it appears that it would have been triable to a law court and there is thus a right to a jury trial. Plaintiff, however, cites four California cases which he contends conclusively establish the proposition that there is no right to a jury trial in cases like the present. (*Lane* v. *Whitaker,* 50 Cal.App.2d 327 [123 P.2d 53]; *O'Dea* v. *Hibernia Savings & Loan Soc.,* 119 Cal.App. 622 [7 P.2d 318]; *Cauhape* v. *Security Savings Bank,* 127 Cal. 197 [59 P. 589]; and *Woolsey* v. *Woolsey,* 121 Cal.App. 576 [9 P.2d 605].) It is significant that none of these cases discussed the possible application of the old common law action of account and none involved a situation where the alleged trustee admitted the funds were held for the use of plaintiff or plaintiff's predecessors in interest; all were thus actions to declare a trust and clearly cognizable only in equity. Our own case is not for the declaration of a trust, existence of which the defendant admits, but presents the simple question whether trust money is still held by the trustee. Under the issues the balance, if any, is admittedly payable to plaintiff. The distinguishing feature between suits against the trustee cognizable only in equity and those which may be brought at law is, as stated in the Austin case, at page 26, that ''[t]he enforcement of a trust in equity has in contemplation the terms, conduct, and management of the trust, the settlement of the trustee's accounts, compensation to the trustee, the order of payment over and his discharge from his trusteeship. None of these matters is here in contemplation.'' The same is true of the present case and of any passive trust of money to be paid over at the request of the beneficiary. The common law courts took jurisdiction of cases of this type in which there was no need for the exercise of equity jurisdiction.

Although the present action is one which could be brought at law, a question arises whether it could also be brought

408

in equity and deprive defendant of a jury trial. ▮ That there may be concurrent jurisdiction is well settled, and in such cases a right of election exists. The converse of the situation before us has frequently been considered and it has been said ''[t]here is a difference of opinion on the question whether, where the beneficiary of a trust can maintain an action at law against the trustee and the remedy at law is an adequate remedy, it is an exclusive remedy and the beneficiary cannot maintain at his option a suit in equity against the trustee. In some cases it has been held that the remedy at law is exclusive. But the better opinion is that the beneficiary can maintain a bill in equity if he chooses.'' (Scott on Trusts, § 198.3; 171 A.L.R. 429; see, e.g. *Ramsey* v. *Ramsey,* 351 Pa. 413 [41 A.2d 559], and *People* v. *Houghtaling,* 7 Cal. 348.) Both the Ramsey and Houghtaling cases involved trusts of money (the first express, the other constructive) and were factually similar to the present case. In both of these cases and in the cases cited by Scott, *supra,* and in the annotation 171 A.L.R. 429 it was held that a bill in equity could be maintained despite the fact an action at law would have been an adequate remedy. ▮ The fact that trial by jury is jealously preserved as a matter of right dictates that the mere existence of a remedy in equity cannot operate to defeat a right to proceed at law. It is only where the issues to be tried are exclusively equitable in nature that a suitor is deprived of the right to a jury trial. Those that are legal in nature are triable to a jury. (*Connell* v. *Bowes,* 19 Cal.2d 870 [122 P.2d 456]; *Hutchason* v. *Marks, supra,* 54 Cal.App.2d 113; *Bartholomew* v. *Bartholomew,* 56 Cal.App.2d 216, 234 [132 P.2d 297]; *Farrell* v. *City of Ontario, supra,* 39 Cal.App. 351.)

▮ It is not open to question that jury trial was a matter of right if the action is at law, even if it could have been brought in equity. Allegations that Mildred Ripling received the money ''in trust'' and ''for safekeeping'' do not change the essential nature of the action nor does the allegation that plaintiff is uncertain as to the amount thus received. At one stage of the proceedings plaintiff obtained an attachment upon a claim based upon express contract and for money had and received. At another stage he objected to a jury trial upon the ground that he is seeking to have the court declare a trust in his favor. We hold that he has elected to proceed at law. A judgment is sought for money presently

due; the terms of the alleged trust and the duties of Mildred Ripling are not in dispute; an attachment is outstanding, and a court of law can grant plaintiff complete relief as effectively as equity. Applicable here is the principle stated in *Mortimer* v. *Loynes,* 74 Cal.App.2d 160, 168 [168 P.2d 481] : ''None of the extraordinary powers of a court of equity are required in order to give plaintiff the relief that he seeks. A court of law can afford complete relief. It is thus apparent that this action is one at law.''

The issues presented by the pleadings are triable at law, and to a jury, pursuant to the demand of petitioners.

Let a peremptory writ issue.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied August 11, 1952, and Real Party in Interest's petition for a hearing by the Supreme Court was denied September 18, 1952.